Laura M. Franze (admitted pro hac vice)
lfranze@akingump.com
M. Brett Burns (admitted pro hac vice)
bburns@akingump.com
Stephanie K. Osteen (admitted pro hac vice)
sosteen@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone:  (214) 969-2800
Facsimile:  (214) 969-4343

Tricia Schafer (018748)
tricia.schafer@mwmf.com
**MARISCAL, WEEKS, MCINTYRE, FRIEDLANDER, P.C.**
2901 North Central Avenue, Suite 200
Phoenix, Arizona 85012
Telephone:  (602) 889-5341
Facsimile:  (602) 285-5100

Attorneys for Defendant

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Kamran Madani and Abolfalz Vaghef, | No.  CV-04-1897-PHX-RCB |
| Plaintiffs, | |
| v. | **DEFENDANT'S MOTION TO EXCLUDE EEOC LETTERS OF DETERMINATION AND ALTERNATIVE REQUEST FOR EVIDENTIARY HEARING ON ADMISSIBILITY OF THE LETTERS** |
| BHVT Motors, Inc., | |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

Defendant BHVT Motors, Inc. d/b/a Bell Honda files this Motion To Exclude And Alternative Request For Evidentiary Hearing and respectfully shows the Court as follows:

## I. INTRODUCTION AND SUMMARY OF ARGUMENTS

Plaintiffs recently identified two EEOC Determination Letters as pretrial exhibits and stated their intention to introduce them into evidence at trial. These Determination Letters should be excluded from the evidence presented at trial in this case because they are the product of an agency investigation so demonstrably biased, flawed, and lacking in due process that no probative weight can or should be ascribed to them. They were issued after years of dilatory and unexcused agency delay during which multiple documented requests for basic factual information by Bell Honda were ignored, and that delay has resulted in a fundamental deprivation of Bell Honda's basic notice and due process rights. Moreover, the content of the Determination Letters is blatantly (and at times seemingly purposefully) misleading, tainted by hearsay, double hearsay, conclusory statements, and multiple other evidentiary defects, which nullifies any probative value of the letters while maximizing the danger of unfair prejudice. Under these circumstances, the Court can and should exercise discretion to exclude the EEOC's reasonable cause determinations from evidence. In an abundance of caution, should the Court determine it cannot grant this necessary relief based on the record before it, Defendant respectfully requests that the Court hold an evidentiary hearing pursuant to Federal Rule of Evidence 104(c) prior to ruling on the motion.

## II. FACTS RELEVANT TO THIS MOTION

### Plaintiffs' Charges Of Discrimination

1.    Plaintiffs filed charges of discrimination with the Phoenix District Office of the EEOC on July 17, 2001. (*See* Charges of Discrimination, attached as Exhibit A.) In their charges, Plaintiffs alleged they had been harassed on the basis of their Iranian national origin and retaliated against while employed at BHVT Motors, Inc. d/b/a Bell

1

Honda, an automobile dealership owned by Cecil Van Tuyl. (*See id*.) Plaintiffs, however, did not identify anyone at Bell Honda responsible for any alleged misconduct. (*See id*.)

2.      In the same charges, Plaintiffs identified Automotive Investment Group–Arizona, Inc., an independent management consulting company owned by Larry Van Tuyl as their co-employer. (*See id..*) Plaintiffs made no substantive allegations against Automotive Investment Group–Arizona, Inc. and provided no facts explaining the basis of their claim that they were employees of Automotive Investment Group–Arizona, Inc. Plaintiffs also failed to identify any facts indicating who at Automotive Investment Group–Arizona, Inc. was responsible for any alleged misconduct. (*See id*.)

3.      On July 25, 2001 and September 25, 2001, Plaintiffs amended their charges of discrimination to name VT, Inc., a Kansas corporation owned by Cecil Van Tuyl, as another alleged employer. (*See* Amended Charges of Discrimination, attached as Exhibit B.) Plaintiffs made no new substantive allegations and provided no facts explaining the basis of their claim that they were employees of VT, Inc. (*See id*.) Plaintiffs also failed to identify any facts indicating who at VT, Inc. was responsible for any alleged misconduct. (*See id*.)[1]

**The EEOC's Investigation And Lawsuit Against Pinnacle Nissan, Inc.**

4.      At the time Plaintiffs filed their charges of discrimination, the Phoenix District Office of the EEOC had extensively publicized and was actively prosecuting a pattern and practice national origin lawsuit against Pinnacle Nissan, Inc. and ABC Nissan, Inc. f/d/b/a Automotive Investment Group, Inc., two automobile dealerships owned by Larry Van Tuyl. The lawsuit was filed in September 2000 and involved allegations of

---

[1] The only entity that employed Plaintiffs is Bell Honda. Automotive Investment Group–Arizona, Inc. and VT, Inc. never employed Plaintiffs and were dismissed by voluntary stipulation previously. (*See* Order dated 7/13/05, Docket Entry No. 32.)

1  national origin harassment and retaliation against former employees, including former

2  employees of Middle Eastern descent, that were nearly identical to the claims made by

3  Plaintiffs to the same Phoenix EEOC Office less than one year later.  (*See* Complaint filed

4  in *EEOC v. Pinnacle Nissan, Inc. et al.*, Case No. 2:00-cv- 01872-MHM, Docket Entry

5  No. 1.)

6       5.     Stephen Montoya, Plaintiffs' counsel in the present lawsuit, also represented

7  the former Pinnacle Nissan employees who intervened in the EEOC's lawsuit against

8  Pinnacle Nissan and ABC Nissan.  (*See* Complaint in Intervention filed in *EEOC v.*

9  *Pinnacle Nissan, Inc. et al.*, Case No. 2:00-cv- 01872-MHM, Docket Entry No. 18.)  At

10  the same time, Mr. Montoya was simultaneously assisting the EEOC with its investigation

11  of Plaintiffs' charges of discrimination against Bell Honda, Automotive Investment

12  Group–Arizona, Inc., and VT, Inc.  (*See* collected correspondence from S. Montoya to

13  EEOC, attached hereto as Exhibit C.)

14       6.     During its investigation of Pinnacle Nissan, among other things, EEOC

15  investigators fabricated witness logs and admittedly failed to follow EEOC investigation

16  protocols.  (*See* Deposition of Orlando Garcia ("Garcia Dep") at 56-59, 99-101, 144-149,

17  attached hereto as Exhibit D.)  The United States District Court for the District of Arizona

18  also concluded that the EEOC had failed to engage in good faith conciliation with

19  Pinnacle Nissan, a determination based in part on findings that the EEOC had wrongfully

20  withheld material information from Pinnacle Nissan and had improperly delegated

21  conciliation responsibilities to Mr. Montoya.  (*See* Order dated 8/14/01 in *EEOC v.*

22  *Pinnacle Nissan, Inc. et al.*, Case No. 2:00-cv- 01872-MHM, Docket Entry No. 145.)

23  **The EEOC's Investigation Of Bell Honda,**

24  **Automotive Investment Group–Arizona, Inc., and VT, Inc.**

25       7.     In or around September 2001, Plaintiffs' amended charges of discrimination

26  were transferred to the Albuquerque District Office of the EEOC for investigation.  The

1   Albuquerque District Office requested a position statement with supporting

2   documentation from Bell Honda, which was provided on September 19, 2001.  (*See* Letter

3   from L. Williams to R. Smith dated 9/19/01, attached as Exhibit E.)  Position statements

4   from Automotive Investment Group–Arizona and VT, Inc. were never requested.

5          8.     There is no evidence that the Albuquerque District Office ever conducted

6   interviews of any employee of Bell Honda, Automotive Investment Group–Arizona, Inc.

7   or VT, Inc. regarding Plaintiffs' allegations.

8          9.     During the Albuquerque District Office's investigation, it ignored a written

9   request for information made by Bell Honda in December 2001 seeking copies of witness

10  affidavits the EEOC possessed allegedly supporting Plaintiffs' harassment allegations.

11  (*See* Letter from L. Williams to D. Norris dated 12/27/01, attached as Exhibit F.)

12        10.    On January 4, 2002, the Albuquerque District Office issued letters of

13  determination addressed to Bell Honda, Automotive Investment Group–Arizona, Inc. or

14  VT, Inc. stating, among other things, "Respondents are employers within the meaning of

15  Title VII" and "I have determined there is reasonable cause to believe Respondents

16  violated Title VII."  (*See* Determination Letters dated 1/4/02, attached as Exhibit G.)

17        11.    For approximately three months, the parties participated in the EEOC's

18  conciliation process.  During the conciliation process, repeated requests for information

19  concerning the EEOC's determination findings were made.  (*See* Letters from L. Williams

20  to D. Norris dated 2/1/02 and 4/26/02, attached hereto as Exhibit H.)  On May 16, 2002,

21  however, the Albuquerque District Office issued a letter that states, in relevant part:

22       On January 4, 2002, the Commission determined that there was reasonable
    cause to believe that violations of the law had occurred in the above
23  referenced charges.  Since then, the Commission has tried to conciliate the
    issues through oral discussions and correspondence with the parties
24  regarding their separate positions.  In consideration of questions raised
    during the discussions and correspondence, this office is hereby ceasing its
25  conciliation efforts and rescinding the original letters of determination.  The

26

investigation into the charges of discrimination is hereby re-opened and will be conducted by David Norris, Investigator . . . .

(*See* Letter from G. Marchbanks dated 5/16/02, attached hereto as Exhibit I.)

12.     Despite the EEOC's statement that the investigation would be re-opened, there is no evidence that any investigation was ever conducted by Mr. Norris or the Albuquerque District Office.  Instead, *eleventh months later*, with no explanation, Plaintiffs' charges were transferred to the Houston District Office of the EEOC.  (*See* Letters from G. Marchbanks dated 4/7/03, attached hereto as Exhibit J.)

13.     *Four months later*, on August 15, 2003, the Houston District Office of the EEOC sent a letter to Bell Honda's prior counsel that states in relevant part, "I have reviewed the files and note that you may not have had the opportunity to present witnesses in support of your position.  If you have witnesses whom you believe can provide testimony that will aid in the defense of you client, please provide me with their names, address, telephone number, and what they can attest to.  Please submit this information to me on, or before, August 29, 2003.  If I do not receive the names of witnesses, or other information that you deem relevant to the allegations of the charge, by the above date, I will proceed with a determination based upon the information in the case files."  (Letter from C. Hopwood to L. Williams dated 8/15/03, attached hereto as Exhibit K.)

14.     On August 29, 2003, Bell Honda responded to the Houston Office's letter.  Once again, Bell Honda requested basic factual information needed to provide Bell Honda with reasonable notice of Plaintiffs' claims including, specifically, what misconduct Plaintiffs were alleging, when they alleged the misconduct occurred, who they believed was responsible for the misconduct, and to whom they allegedly reported the misconduct.  (*See* Letter from B. Burns to C. Hopwood dated 8/29/03, attached hereto as Exhibit L.)  Bell Honda explained to the Houston EEOC Office that receipt of this information was necessary for it to determine who its supporting witnesses were.  (*See id*.)

15.     On September 12, 2003, the Houston Office wrote Bell Honda and identified the names of the persons at Bell Honda that Plaintiffs alleged were responsible for harassing them.  (*See* Letters from C. Hopwood to B. Burns dated 9/12/03, attached hereto as Exhibit M.)  By that late date, however, more than two years had expired since Plaintiffs' charges were filed, none of the persons identified by the EEOC were even employed by Bell Honda, and Bell Honda's opportunity to investigate, produce witnesses to the EEOC, and defend against Plaintiffs' allegations was materially prejudiced.  (*See* Affidavit of Curtis Gibson ("Gipson Decl."), attached hereto as Exhibit N.)[2]

16.     On September 26, 2003, Bell Honda expressed these concerns to the Houston Office and reiterated again its request to be furnished with all information supporting Plaintiffs' charges, including any witness affidavits containing allegations against Bell Honda, so that it would have notice of the claims against it and a full opportunity to respond.  (*See* Letters from B. Burns to C. Hopwood dated 9/26/03, attached hereto as Exhibit O.)  Bell Honda made another request for the names of any witnesses who supported the allegations against it on December 2, 2003.  (*See* Letter from B. Burns to C. Hopwood dated 12/2/03, attached hereto as Exhibit P.)

17.     The Houston Office never identified any witnesses or disclosed witness affidavits to Bell Honda.  There is no evidence that the Houston Office ever conducted interviews of any employee of Bell Honda (other than one telephone interview with Bell Honda's former General Manager, in which he denied knowledge of any facts supporting Plaintiffs' claims and denied that either Plaintiff reported alleged harassment to him), Automotive Investment Group–Arizona, Inc., or VT, Inc. regarding Plaintiffs' allegations.

---

[2] In its September 12, 2003 letters, the EEOC identified five former Bell Honda managers – Brett Strauss, Phil Kerr, Mike Westbrook, Dale Bruemmer, and John Williams – as persons who allegedly harassed Plaintiffs.  (Ex. M.)  None of these individuals were employed at Bell Honda as of that date.  (Ex. N, Curtis Decl. ¶¶ 6, 9, 11-13.)

1   Instead, on January 25, 2004 and February 24, 2004, it issued amended letters of

2   determination stating, among other things, "Respondents are employers within the

3   meaning of Title VII" and "I have determined there is reasonable cause to believe

4   Respondents violated Title VII."  (Amended Determination Letters, attached hereto as

5   Exhibit Q.)

6          18.    On April 1, 2004, Bell Honda requested that the Houston Office withdraw

7   the Amended Determination Letters because Bell Honda had been denied a fair

8   opportunity to respond to key evidence that had formed the basis for the EEOC's findings,

9   and because there material misstatements in the EEOC's findings regarding why the

10  Initial Determination Letters had been withdrawn.  Bell Honda also asked for "proper

11  notice of the allegations and evidence against [it], including facts concerning previously

12  withheld witness identities and affidavits, and that [it] be given a full and fair opportunity

13  to respond to the allegations against [it]."  (*See* Letter from B. Burns to M. Fetzer dated

14  4/1/04, attached hereto as Exhibit R.)

15         19.    On April 7, 2004, wrote the EEOC again and expressed concern about the

16  EEOC's apparent belief that "Bell Honda has no right to know the identity of the

17  witnesses whose affidavits form the basis of your Amended Letter[s] of Determination,

18  and that Bell Honda has no right to review the witness affidavits, either."  (*See* Letter from

19  B. Burns to M. Fetzer dated 4/7/04, attached hereto as Exhibit S.)

20         20.    On May 25, 2004, Bell Honda wrote the EEOC again requesting the identity

21  of the persons who had provided affidavits to the agency during the investigation, stating

22  that if it "affirmatively states in a letter of determination that certain affidavits in its

23  possession form the basis of a determination that is adverse to a respondent, then the

24  respondent is entitled to receive information concerning the affidavits, and at the very

25  least learn the identity of the affiants and the allegations made by them."  Bell Honda also

26  requested again that the EEOC correct the demonstrably false misstatements in the

Amended Letters of Determination that falsely claimed Bell Honda had failed to provide promised information. (*See* Letters from B. Burns to M. Fetzer dated 5/25/04, attached hereto as Exhibit T.)

21.     Finally, on July 28, 2004, after the EEOC failed conciliation, Bell Honda wrote the EEOC and stated that, while it stood by its request that the EEOC withdraw the Amended Letters of Determination, it objected to the decision to fail conciliation. Bell Honda pointed out that, not only had the EEOC not responded to Bell Honda's May 25, 2004 letter or conducted any follow-up investigation, the EEOC had not made a good faith effort to conciliate because it had not provided Bell Honda a conciliation demand, any idea of damages sought by Plaintiffs, or other information needed by Bell Honda to fairly participate in the conciliation process. (*See* Letters from B. Burns to M. Fetzer dated 7/28/04, attached hereto as Exhibit U.)

22.     The identify of the witnesses and affidavits of those witnesses that allegedly supported the Amended Determination Letters were not produced until February 25, 2005. By that time, none of the individuals had worked for Bell Honda for years, and none of the witnesses could be located. (Ex. N, Curtis Decl. ¶¶ 6, 9, 11-13; Affidavit of Stephanie Osteen ("Osteen Decl.") ¶¶ 5-7, attached hereto as Exhibit V.)

## I. ARGUMENT

Because Title VII does not address the issue of whether EEOC determination letters are admissible in subsequent employment litigation, federal courts evaluate the issue of admissibility on a case-by-case basis in accordance with evidentiary principles. *See, e.g, Coleman v. Home Depot, Inc.*, 306 F.1333, 1346 (3d Cir. 2002); *Williams v. Nashville Network*, 132 F.3d 1123, 1129 (6th Cir. 1997); *Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995); *Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 201-02 (5th Cir. 1992); *Smith v. Massachusetts Inst. of Tech.*, 877 F.2d 1106, 1113 (1st Cir. 1989); *Tulloss v. Near N. Montessori Sch., Inc.*, 776 F.2d 150, 153-54 (7th

1  Cir. 1985); *Johnson v. Yellow Freight Sys., Inc.*, 734 F.2d 1304, 1309-10 (8th Cir. 1984);

2  *Whatley v. Skaggs Cos.*, 707 F.2d 1129, 1136-37 (10th Cir. 1983); *Gillin v. Federal Paper*

3  *Bd. Co.*, 479 F.2d 97, 99-100 (2d Cir. 1973); *Cox v. Babcock & Wilcox Co.*, 471 F.2d 13,

4  15 (4th Cir. 1972); *Smith v. Universal Servs., Inc.*, 454 F.2d 154, 156-57 (5th Cir. 1972).

5  These and other courts, including the Supreme Court of Arizona, have recognized the

6  propriety of at least two challenges to the admissibility of a reasonable cause

7  determination, including (1) complaints that a determination constitutes inadmissible

8  hearsay because it fails to meet the standards of trustworthiness and reliability; and (2)

9  complaints that a determination, even if relevant and trustworthy, should be excluded

10  because its probative value is substantially outweighed by the risk of unfair prejudice. *See*

11  *Coleman*, 306 F.1333 at 1346; *Walker*, 53 F.3d at 1555; *Miller v. Field*, 35 F.2d 1088,

12  1091-92 (6th Cir. 1994); *Cortes*, 977 F.2d at 201-02; *Smith*, 877 F.2d at 1113; *Johnson*,

13  734 F.2d at 1309-10; *Gillin*, 479 F.2d at 99-100; *Shotwell v. Donahoe*, 85 P.3d 1045,

14  1049 (Ariz. 2004).

15  **A.     The Court Should Assess Whether The EEOC'S Determination Letters Are**
      **Admissible In This Case.**
16

17       The Court can and should critically assess the Determination Letters at issue in the

18  present lawsuit.  Although the Ninth Circuit has characterized itself as having a "*per se*

19  rule of admissibility*" for EEOC reasonable cause determinations, it has never gone so far

20  as to hold that there can exist no circumstances that would justify excluding an EEOC

21  determination from evidence.  In *Bradshaw v. Zoological Society of San Diego*, 569 F.2d

22  1066 (9th Cir. 1978), the plaintiff attached a copy of an EEOC probable cause

23  determination to her complaint, but the district court ordered it stricken.  *See Bradshaw*,

24  569 F.2d at 1068-69.  On appeal from the entry of summary judgment against the plaintiff,

25  the Ninth Circuit held that the district court had erred by concluding that the report was

26  "to be given no weight in [the] court's determination of the case." *Id.* at 1069.  In support

of its holding that the district court's blanket rule of exclusion constituted reversible error, the Ninth Circuit relied on two cases – *Chandler v. Roudebush*, 425 U.S. 840, 863 (1976) and *Smith v. Universal Servs., Inc.*, 454 F.2d 154, 156-58 (5th Cir. 1972), both of which recognized that reasonable cause determinations *may* be admitted as evidence *if* certain evidentiary requirements are met.[3]

A few years later, in *Plummer v. Western Int'l Hotels Co.*, 656 F.2d 502, 505 (9th Cir. 1981), the Ninth Circuit extended its holding in *Bradshaw* to jury trials, stating that "a plaintiff has a right to introduce an EEOC reasonable cause determination in a Title VII lawsuit, regardless of . . . whether the case is tried before a judge or jury." *Plummer*, 656 F.2d at 505. In reaching this conclusion, the Ninth Circuit characterized *Bradshaw* and *Smith* as applying a "per se rule of admissibility" for such reports. *Id*. at 505. *Bradshaw*, however, as explained above, did not hold that reasonable cause determinations would always be admissible under all circumstances. *See Bradshaw*, 569 F.2d at 1069.

---

[3] In *Chandler*, the United States Supreme Court mentioned in a footnote that a Civil Service Commission's report could be admissible in a federal employee's Title VII case pursuant to Federal Rule of Evidence 803(8)(C), the public records exception to the general hearsay rule. *Chandler*, 425 U.S. at 863 n.39. The Supreme Court thus did not hold in *Chandler*, and has never held, that reasonable cause determinations always would be admissible in an employment litigation proceeding. Quite the contrary, the Supreme Court acknowledged that such reports could, in fact, be deemed inadmissible if they were untrustworthy. *Smith* was decided along very similar lines. In that case, the Fifth Circuit addressed for the first time the question of admissibility of an EEOC probable cause determination. Recognizing that such reports could have probative value, the Fifth Circuit held that EEOC determinations are admissible if the circumstances surrounding the reports justify their acceptance into evidence as business records under the Federal Business Records Act, 28 U.S.C. § 1732. *Smith*, 454 F.2d at 157-58. The *Smith* court, given the particular circumstances of its case, held that the EEOC's probable cause determination was admissible because the EEOC "was not a party to the litigation and can have no interest therein," because the report resulted from an investigation that was "not self-serving nor compiled for purposes of litigation only," and because there was "no reason to suspect any lack of trustworthiness." *Id*. at 158. Thus, the *Smith* court also recognized that circumstances suggesting that an EEOC reasonable cause determination is untrustworthy can render the report inadmissible as evidence.

1   Moreover, *Bradshaw* based its ruling on *Smith*, which went even further away from a per

2   se rule of admissibility by acknowledging that an EEOC determination may be deemed

3   inadmissible if the circumstances surrounding their creation indicate a lack of

4   trustworthiness.  *See Smith*, 454 F.2d 158.[4]

5     The Ninth Circuit has never gone so far as to hold that there can exist no

6   circumstances that would justify excluding an EEOC determination from evidence.  A

7   close examination of the court's decisions reveals that there is no support for such an

8   absolute rule, which would be inconsistent with every other circuit and which would allow

9   the Court no discretion to reasonably assess problematic due process issues, such as those

10  presented here.  The Court can and should consider Bell Honda's position on this issue.

**B.**  **Strong Reasons Exist For Questioning The Admissibility Of The EEOC's Determination Letters In This Case.**

13    The *Plummer* court's rationale for accepting EEOC determinations into evidence

14  was based primarily on the presumption that the EEOC acts impartially in conducting its

15  investigations.  *See Plummer*, 656 F.2d at 505 (EEOC determinations are valuable because

16  they are "prepared by professional investigators on behalf of an impartial agency").  This

17  view originated in *Smith*, where the Fifth Circuit observed that reasonable cause

18  determinations are "not prepared in anticipation of litigation" and the EEOC has no

19  interest in the litigation in which they may be offered.  *Smith*, 454 F.2d at 158.  Notably,

20  *Smith* was decided in 1972.

21    In light of fundamental changes to Title VII's statutory enforcement scheme,

22  however, these observations are no longer valid.  In 1972, Congress passed the Equal

23  Employment Opportunity Act, which amended Title VII to authorize the EEOC to bring

---

[4] To the extent that these cases are interpreted to hold that an absolute ban exists, they violate due process.

1  discrimination suits against employers.  Pub. L. No. 92-261, 86 Stat. 103 (1972).  This

2  severely weakens the analysis in *Smith* and consequently, in *Plummer*, because EEOC

3  investigators now (almost routinely) view themselves as advocates for the charging party.

4  *See generally General Tel. Co. v. EEOC*, 446 U.S. 318, 326 (1980) (recognizing that the

5  "EEOC acts . . . at the behest of and for the benefit of specific individuals" as well as for

6  the public); *EEOC v. Michael Constr. Co.*, 706 F.2d 244, 251 (8th Cir. 1983) (noting that

7  the "EEOC specialist investigating [the] charge pursued the investigation at least

8  'partially' with the intent of achieving a monetary settlement even though . . . she saw no

9  merit to [the] charge"); *EEOC v. Jacksonville Shipyards*, 696 F. Supp. 1438, 1440 (M.D.

10  Fla. 1988) (describing the EEOC as the "representative of the charging parties").

11      Assuming for the sake of argument that the Ninth Circuit truly meant to adopt an

12  absolute, per rule of admissibility, it never could have intended to extend that rule to

13  situations, as here, where the combination of the agency's biased investigation and refusal

14  to disclose information and the agency's unreasonable extension of the duration of the

15  investigation have acted to deprive a defendant of fundamental notice and due process

16  rights.  As the exchange of correspondence between the EEOC and Bell Honda

17  demonstrates in this case, this was not a typical or routine investigation where an

18  employer simply provides a response or position statement to the EEOC.  Instead, Bell

19  Honda interacted with the EEOC from the inception of the investigation in an attempt to

20  cooperate with the Commission as it investigated Plaintiffs' charges.  Its efforts were

21  thwarted, however, when the EEOC refused to give Bell Honda fundamental information

22  that it needed to fully understand and meaningfully respond to Plaintiffs' allegations,

23  including the names of the alleged harassers and the identity of the witnesses who

24  provided sworn affidavits to the EEOC.  (*See* Exs. F, H, L, O, P, R, S, T, U.)  There is no

25  excuse for this delay, and the delay has now materially prejudiced Bell Honda's rights,

26  prejudice that is exacerbated if the Determination Letters are admitted into evidence.

1    Moreover, in the present case, the EEOC's bias against the owners of Bell Honda.

2    Automotive Investment Group–Arizona, Inc., and VT, Inc. is demonstrable.  As detailed

3    above, when Plaintiffs filed their charges of discrimination against Bell Honda,

4    Automotive Investment Group–Arizona, Inc., and VT, Inc., the EEOC already was a party

5    to an active lawsuit involving almost identical harassment and retaliation allegations

6    against two automobile dealerships and a former management consulting company owned

7    by Larry Van Tuyl, the owner of Automotive Investment Group–Arizona, Inc. and the son

8    of the owner of Bell Honda and VT, Inc.  A review of the predicate EEOC investigation to

9    that lawsuit discovered numerous agency improprieties and ultimately culminated in a

10   judicial finding that the EEOC failed to engage in good faith conciliation by failing to

11   provide material information to the affected defendants.  (*See* Ex. D, Garcia Dep at 56-59,

12   99-101, 144-149; Order dated 8/14/01 in *EEOC v. Pinnacle Nissan, Inc. et al.*, Case No.

13   2:00-cv- 01872-MHM, Docket Entry No. 145.)  Under these circumstances, the EEOC

14   can hardly be seen as a neutral, unbiased, investigatory agency – it certainly was not with

15   respect to Bell Honda.

16   **C.    The EEOC's Determination Letters Should Be Excluded From Evidence
17         Because They Are Untrustworthy.**

18        "In deciding whether. . . EEOC determinations and reports should be admitted, the

19   district court may be guided by . . . whether the report raises questions of trustworthiness

20   under Fed R. Evid. 803(8)(C)."  *Barfield v. Orange County*, 911 F.2d 644, 650 (11th Cir.

21   1990).  Courts exclude reports from administrative agencies where there is an indication

22   of a lack of trustworthiness surrounding the report.  *See* Fed. R. Evid. 803(8)(C); *Miller v.*

23   *Field*, 35 F.2d 1088, 1091-92 (6th Cir. 1994); *McKinnon v. Skil Corp.*, 638 F.2d 270, 278

24   (1st Cir. 1981).

25

26

1. **The letters are untrustworthy because of the lack of fairness surrounding the fact-finding and investigation.**

The EEOC's determinations lack trustworthiness because the EEOC purposefully concealed material information concerning Plaintiffs' allegations against Bell Honda, including the identify of the managers who allegedly harassed Plaintiffs and the alleged witnesses who provided affidavits on which the EEOC relied in making its determination that Bell Honda had discriminated against Plaintiffs, despite Bell Honda's repeated request for the information. (*See* Exs. F, H, L, O, P, R, S, T, U.)  As a result, Bell Honda was not afforded adequate notice of Plaintiffs' allegations or a full and fair opportunity to respond to Plaintiffs' allegations and was effectively denied the ability to identify and preserve key evidence essential to defending itself in this lawsuit.

By the time the EEOC finally disclosed the names of the managers who allegedly harassed Plaintiffs, none of the individuals were employed by Bell Honda and, consequently, Bell Honda's opportunity to investigate Plaintiffs' allegations and later defend itself in this case was materially prejudiced. (*See* Ex. M, Gipson Decl. ¶¶ 6, 9, 11-13.)  Similarly, once the witness affidavits were finally obtained by Bell Honda through discovery in this lawsuit, the last known address and contact information for the affiants was (and still is) no longer valid. (*See* Ex. V, Osteen Decl. ¶¶ 5-7.)

One of the assumptions surrounding the EEOC's investigatory duties is that it will interview all material witnesses and hear from both the complainant and the respondent. *See* Fed. R. Rule 803(8)(C) advisory committee's note (one factor of trustworthiness is whether a hearing was held; while a hearing is not part of the EEOC's protocol, gathering evidence from both parties and allowing them a full-opportunity to present an accurate picture is in the best interest of investigating and conciliating).  Bell Honda was not afforded that opportunity.  Other than one interview with a former General Manager who unequivically refuted Plaintiffs' allegations, there is no evidence that any employees of

1  Bell Honda, Automotive Investment Group–Arizona, Inc., or VT, Inc. were ever

2  interviewed, or that attempts to interview them were made.  Moreover, the witness

3  statements on which the EEOC relied in making its reasonable cause determinations were

4  prepared for the EEOC by Mr. Montoya and there is no indication or evidence that the

5  EEOC ever actually interviewed any of the affiants themselves.  (*See* Ex. C, collected

6  correspondence from S. Montoya to EEOC.)  The EEOC cannot lawfully defer

7  investigation responsibilities to private counsel.

8        The EEOC's reasonable cause determinations do not possess any of the positive

9  traits cited by other courts in favor of admission into evidence, either.  Specifically,

10  because the EEOC did not interview any of the alleged harassers, and apparently did not

11  interview any of the alleged witnesses, either, or even reveal their identity so Bell Honda

12  could interview them, it cannot be said that the EEOC's determination "contains findings

13  of fact made from accounts by different witnesses, [or] subjective comment on the

14  credibility of these witnesses." *Smith*, 454 F.2d at 157.  Also, because the amended letters

15  of determination were merely piggy-backed on the Albuquerque District Office's

16  investigation – *that was disowned by the EEOC* – it cannot be said that "there is no reason

17  to suspect any lack of trustworthiness." *Id.* at 158.

18       **2.**     **The letters are untrustworthy because the EEOC was biased against**
19                **Bell Honda due to previous litigation.**

20        The EEOC determination letters also lack trustworthiness because of the bias of the

21  agency – one of the factors specifically listed in the advisory notes to Rule 803(8)(C).  *See*

22  Fed. R. Evid. 803(8)(C) advisory committee's note.  As discussed above, the EEOC was

23  not impartial towards Bell Honda.  It was involved in litigation against multiple entities

24  owned by the son of its owner in a virtually identical lawsuit pending in federal court in

25  Phoenix.  The EEOC's bias was exasperated by the fact that Bell Honda and the entities

26

1   involved in the EEOC lawsuit were represented by some of the same counsel.  (*See*

2   Section II, ¶¶ 4-6, *supra*.)

3       **3.       The letters are untrustworthy because they were not timely issued.**

4       The lack of timeliness in the issuance of the EEOC determination letters indicate a

5   lack of trustworthiness.  According to the advisory notes to Rule 803(8)(C), one factor to

6   be considered in assessing the trustworthiness of an agency report is whether the report

7   was timely created.  *See* Fed. R. 803(8)(C) advisory committee's note.  Here, more than

8   two and-one-half years passed from the time Plaintiffs filed their charges of

9   discrimination and the date the EEOC issued its amended determination letters.  In the

10  interim, the investigation was passed from the EEOC's Phoenix to Albuquerque to

11  Houston offices respectively, often sitting for long periods of time with no activity.  This

12  significant lapse of time further undermines the reliability of the EEOC's determinations.

13  (*See* Section II, ¶¶ 1-3, 7-22, *supra*.)

14      **4.       The letters are untrustworthy because they contain hearsay-within-
              hearsay and numerous other evidentiary defects.**
15

16      The EEOC's determination letters also are inherently untrustworthy and should be

17  excluded from evidence because they contain hearsay-within-hearsay, specifically,

18  statements about what Plaintiffs claim to have told their managers (a critical and hotly

19  contested issue in this case), and statements attributed to five (at the time undisclosed)

20  witnesses about what they claim to have heard other coworkers say at Bell Honda.  (Ex.

21  Q.)  These hearsay statements render the letters untrustworthy and require their exclusion

22  from evidence.  *Miller*, 35 F.2d at 1091-92 (finding reports containing hearsay-within-

23  hearsay should not be presented to jury); *McKinnon*, 638 F.2d at 278 (excluding agency

24  reports as untrustworthy "because they contain double hearsay").

25

26

1
2

**D.    The Amended Letters Of Determination Should Be Excluded From Evidence Because The Unfair Prejudice That Will Result From Their Admission Substantially Outweighs Their Probative Value.**

3
4
5
6
7
8

Relevant evidence may be excluded at trial if its probative value is substantially outweighed by the danger of unfair prejudice.  Fed. R. Evid. 403.  Federal courts have recognized that the admission of an EEOC report, in certain circumstances, may be much more likely to present the danger of creating an unfair prejudice in the minds of a jury. *See Barfield v. Orange County*, 911 F.2d 644, 651 (11th Cir. 1990).  Those circumstances exist here.

9
10

**1.    The Madani Determination Letter contains references to retaliation claims that were dismissed by the Court.**

11
12
13
14
15
16
17
18
19
20

The EEOC's reasonable cause determination for Madani contains factual assertions related to his claim of retaliation and a finding of reasonable cause to believe that he had been forced "to resign . . . in retaliation for having complained internally about the harassment."  (Ex. Q.)  The Court, however, has dismissed Plaintiffs' retaliation claims with prejudice on summary judgment.  (Order dated 1/25/06, Docket Entry No. 44.)  Admitting an EEOC determination that contains facts and a cause finding related to claims for which there is no material issue of fact would be highly prejudicial.  *See Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 201-02 (5th Cir. 1992) (upholding exclusion of cause determination where it contained factual findings related to retaliation claim that plaintiff dismissed before trial).

21
22
23

**2.    Because of the EEOC's deliberate actions, Bell Honda was been denied a meaningful opportunity to challenge the allegations contained in the letters.**

24
25
26

The EEOC's determinations discuss sworn affidavits that support Plaintiffs' allegations of a racially charged work environment.  (Ex. Q.)  They also reference "a constant stream of racially derogatory epithets" and summarily conclude that "nothing

was done to correct the racial harassment." (Ex. Q.)  These statements bear directly on two critical issues in this case – the creation of a hostile work environment and Bell Honda's response to the alleged environment.  Bell Honda, however, had no opportunity during the EEOC's investigation to present information to rebut the witnesses' knowledge and accusations because it did not know their identity.  Bell Honda also will have no ability to cross-examine or confront these individuals at trial because the EEOC repeatedly refused written requests to identify factual information and delayed so long in identifying witnesses that the witnesses cannot now be located.  (*See* Ex. V, Osteen Decl. ¶¶ 5-7.)  The resulting unfair prejudice to Bell Honda is substantial and clearly outweighs any possible probative value of admitting the determination letters.

> **3.      The letters contain a blatant misrepresentation of facts surrounding Bell Honda's participation in the investigation.**

The EEOC determination letters state that the "Initial Letter of Determination was rescinded based on an understanding that Bell Honda had additional highly relevant evidence that they did not have the opportunity to present.  We were not successful in this regard and Respondents provided no important new evidence . . . ."  (Ex. Q.)  This assertion is demonstrably false and completely misstates the facts.  The EEOC's own correspondence states that the Initial Letters of Determination were rescinded because the EEOC acknowledged that "questions [had been] raised during the discussions and correspondence" with the parties following the issuance of the initial letters.  (Ex. I.)  The EEOC's erroneous and unnecessary statement in its amended letters of determination suggests that Bell Honda reneged on an understanding to provide information and failed to deliver important, relevant evidence.  This is simply not true.  These misrepresentations are highly prejudicial and substantially outweigh the probative value, if any, of the determination letters.  *See Walker v. NationsBank of Florida N.A.,* 53 F.3d 1548, 1555

1   (11th Cir. 1995) (exclusion of determination letter where jury might be confused by

2   conflicting and internally inconsistent information in letter).

3       **4.    Excluding the letters will avoid requiring Bell Honda to litigate issues

4           concerning the EEOC's biased and flawed investigation.**

5       If the EEOC's determination letters are admitted, a considerable amount of trial

6   time will be needed for Bell Honda to demonstrate the full extent of the EEOC's bias and

7   the complete inadequacy of its investigation.  This prejudice substantially outweighs any

8   probative value of the letters.  *See Coleman*, 306 F.1333 at 1346 (upholding exclusion of

9   EEOC report and noting "had the EEOC report been admitted, a great deal of time would

10  have been consumed to counter the report's conclusion . . . ."); *Walker*, 53 F.3d at 1555

11  (upholding trial court's exclusion of EEOC determination letter where admission of letter

12  might shift the jury's focus from deciding ultimate issue in the case to problems with the

13  investigation); *Johnson v. Yellow Freight Sys., Inc.*, 734 F.2d 1304, 1309-1310 (8th Cir.

14  1984) (upholding exclusion of EEOC report where "admission of the determination would

15  have necessitated the taking of additional evidence" and "lengthened the trial.")

16  **IV.  CONCLUSION**

17      The EEOC's conduct with respect to its investigation of Plaintiffs' charges of

18  discrimination against Bell Honda, including its deliberate refusal to provide Bell Honda

19  notice of, access to, and fair opportunity to response to key evidence that formed the basis

20  of its reasonable cause determinations, its material misstatement of events concerning its

21  decision to rescind earlier, ill-advised determinations, and its active involvement in

22  litigation against companies having a close family tie to Bell Honda, demonstrate that the

23  EEOC was never acting as an impartial investigatory agency vis-à-vis its dealings with

24  Bell Honda.  For these reasons, the EEOC's amended determination letters are not

25  trustworthy and their admission into evidence at the trial of this case would unfairly

26  prejudice Bell Honda.  The determinations must be excluded from evidence.  If the Court

does not believe it can grant relief to Bell Honda on the record presently before it, Bell Honda respectfully requests that the Court hold an evidentiary hearing so that the issue of admissibility can be resolved well in advance of trial.

Respectfully submitted,

/s/ Stephanie K. Osteen

Laura M. Franze (admitted pro hac vice)
M. Brett Burns (admitted pro hac vice)
Stephanie K. Osteen (admitted pro hac vice)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: (214) 969-2800
Fax: (214) 969-4343

Tricia Schafer (018748)
**MARISCAL, WEEKS, MCINTYRE,
FRIEDLANDER, P.C.**
2901 North Central Avenue, Suite 200
Phoenix, Arizona 85012
Telephone:  (602) 889-5341
Facsimile:  (602) 285-5100

I hereby certify that on this  2nd day of April, 2006, I electronically transmitted the foregoing to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Stephen G. Montoya
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
Attorney for Plaintiff

COPY mailed/delivered to:

Honorable Robert C. Broomfield
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 626
401 West Washington Street, SPC 61
Phoenix, Arizona  85003-2158

By: /s/ Stephanie K. Osteen

58494960